GEORGIA,
Chatham Co.
MAY, 1807.

State
vs.
White.

*Minutes of Superior Court, letter F. p.* 364.

*Chambers, May* 11th, 1807.

The STATE *vs.* EDWARD WHITE.

#### HABEAS CORPUS.

MAJOR *Edward White*, had been appointed in the year
————, Clerk of the Court of Ordinary of Chatham County,
and received a commission for that appointment, from the
then governor of Georgia.   In 1807 he was removed from
office by the justices of the inferior court, acting as a court
of ordinary, and the appointment conferred upon *Thomas
Burke, Esq.*   Major *White* was then required, by an order of
the justices, to deliver up to his successor all the records, docu-
ments, and papers, which had been in his custody as late clerk.
Upon his refusal to do this to the extent required by the jus-
tices, under the belief that the justices possessed no right or
power legal or constitutional to deprive him of an office which
had been secured to him by a commision from the government,
during good behaviour,—upon his refusal, the justices issued
an attachment against him in the following words, viz :

*" Georgia, Chatham County.*
" To the Sheriff of the county of Chatham :—
" Whereas it appears, that *Edward White*, late *keeper* of
the records, papers, and documents of the *court* of *ordinary*
of said county, hath removed a part of the said records, pa-
pers, and documents, from their usual place of deposit, and to
some other place to which access cannot now be obtained.
And whereas, by such removal, the present *keeper* of said re-
cords, papers, and documents, is prevented from taking the
same into his possession, as he has been directed to do by the
court.   *These are therefore to authorise and command* you,

GEORGIA,  forthwith, to take and attach the body of the said *Edward*
Chatham Co.
MAY, 1807.  *White*, and to bring him before us, that he may be done and
dealt with for his said *contempts*, as the law directs.

State
vs.
White.

" Given under our hands and seals, in open court, this 5th
day of May, 1807.

> " *Edward Telfair, J. I. C. C.*    (LS.)
> " *John H. Morel, J. I. C. C.*    (LS.)
> " *A. S. Bulloch, J. I. C. C.*"    (LS.)

Major *White* being arrested and brought before the court,
persisted in his refusal to comply with the order of the justi-
ces, whereupon he was committed, by the following order of
the court, viz :

" *Court of Ordinary, May 5th,* 1807.

" Present,—EDWARD TELFAIR, ⎫ *Justices of the Infe-*
    " JOHN H. MOREL,      ⎬ *rior Court, and Court*
    " A. S. BULLOCH,      ⎭ *of Ordinary.*

" *Edward White,* by virtue of an attachment issued by the
court of ordinary, being brought into court, in consequence
of the said *Edward White* having removed a part of the re-
cords, papers, and documents, appertaining to the court of
ordinary, from their usual place of deposit, and in conse-
quence of his refusal to deliver up the said records, papers,
and documents to the court ; and the said *Edward White* hav-
ing declared, in the face of the court, that he will not deliver
up the said records, papers, and documents, agreeably to the
order of the court, the said *Edward White*, not having there-
fore purged himself of the contempt with which he is charged
*it is ordered,* that he be committed to the common prison of
the county of Chatham : and it is further *ordered*, that the
jailer of said county, do receive into his custody, the body of
the said *Edward White,* and to detain him until discharged
by due course of law."

On the 11th of May, 1807, the judge of the Superior Courts, was applied to, at chambers, for a writ of habeas corpus, which was issued, and the prisoner, *Edward White*, being brought up, the preceding order of the justices of the court of ordinary was returned with the writ, as the cause of his detention and imprisonment.

GEORGIA,
Chatham Co.
MAY, 1807.

State
vs.
W···e.

The grounds upon which the counsel for the prisoner moved for his discharge, or bail, will be found in the opinion delivered by the court ; and the reporter regrets, that it is not in his power to insert their arguments at length. He cannot, from recollection, or from any notes in his possession, do justice to the learning and ability with which the motion was supported. He is compelled to offer a similar apology to the gentlemen who were retained with Mr. Attorney General, to oppose the motion.

Mr. *Attorney General.*

The justices of the inferior court removed the prisoner from his office as *keeper* of the records of the court of ordinary ; and upon his refusal to deliver up the records, papers, and documents appertaining to that court,—and it also appearing, that a part of those records had been taken and removed from their usual place of deposit,—upon these grounds, an attachment was issued against him ; and being brought before the court, he still refuses to deliver up the records, as he doubted the authority of the court to remove him from his office ; whereupon he was, by order of the justices, committed for a contempt.

His counsel now, upon the return of this writ, move for his discharge, upon the ground, that the prisoner is a commissioned officer of the government, and therefore could not be removed by the justices, as an officer holding an appointment *durante bene placito ;* and that, therefore, if he could not be removed at pleasure, he could commit no contempt by a disobedience to an order which did not recognise him as an officer of the court.

The question then to be investigated is, whether the keeper

GEORGIA,
Chatham Co.
MAY, 1807.

State
vs.
White.

(or the clerk, as he is called by the other side,) of the records of the court of ordinary holds his appointment *durante bene placito ?*

The solution of the question must be sought for in the principles of the constitution.

By the constitution, some officers hold their appointments during good behaviour : of this class are, 1. Justices of the inferior court. 2. Justices of the peace. 3. Clerks of the Superior and Inferior Courts. Others for a term of years, or some determinate period. Of this class are, 1. The governor. 2. The judges of the Superior Courts. 3. The officers of the law department. 4. The members of the general assembly. 5. Sheriffs.

There is a third class of officers, who held their appointments *durante bene placito*, as examples might be enumerated, staff officers among the military, and all these appointments created by a constitutional officer, and are merely auxiliary to some duties which the laws impose on him, and all those appointments which are created by the legislature, the duration and continuance of which is left indefinite, and may therefore, at the pleasure of the legislature, be revoked.

To which of these classes of appointments is the office of keeper of the records to be attached ?

The constitution leaves the tenure of no office uncertain, where it has been conceived necessary to designate and express it.

It is not barely satisfied with declaring that this, or that officer shall hold his office during good behaviour, or for a certain period of time, but it also declares, that a commission shall be given ; it declares too, the form of prosecution to be pursued against the delinquent officer.

The constitution treats (if the expression may be allowed,) the person having charge of the records, with the most striking levity. It does not specify the tenure by which he shall hold his office ; it *does not* declare, that he shall be *commissioned*, it gives him no official title, he is to be appointed by the justices of the inferior court, *any one of whom*, except as

GEORGIA,
Chatham Co.
MAY, 1807.

State
vs.
White.

to the granting marriage licenses, may assume his functions, and discharge the most important of his duties. 6 Sect. of art. 3. Marb. and Crawf. Dig. 28.

The constitution points out no form of prosecution, judicial or legislative, through which he may be removed for abuses, misdemeanors, or malpractices in office.

The constitution is to be construed literally *et expressio unius est exclusio alterius.*

If it was intended, that the officer should hold his appointment during good behaviour, the constitution would have said so ; if the nature and importance of the office had required a commission, the constitution would have given one.

If it had bee deemed necessary that a judicial or legislative prosecution should take place previous to his removal, the constitution would have specified it. But in all these respects the constitution is silent ; can *this* court or any other tribunal then, strip and borrow the attributes of a tenure, which is certain and defined, which is protected by all the ramparts of the law against the *ipse dixit* of authority, the *jubeo, volo, stet pro ratione voluntas* of an uncontrolled power, to clothe another appointment with them, which the letter of the constitution has left naked, insulated and unprotected ? would not this be *jus dare*, and is that the province of the court ?

What a solecism, that an appointment merely incidental to another appointment, the functions of which may be suspended at any time, and exercised by one or more of the justices of the inferior court, should stand upon the same footing, on the scores of tenure and responsibility as the power which created it ! ! !

The principle being admitted, that the duty of *keeper* of the records may be exercised by one or more of the justices, is an admission of the principle, that he is dependent upon the justices for the tenure of his office : for the assumption of those functions by one or more of the justices, presupposes a power of removal *ad libitum*, or, it treats the person having the care of the records as a person whom they may at one moment dress up in a little " brief authority," and in the

GEORGIA,
Chatham Co.
MAY, 1807.

State
vs.
White.

succeeding moment perform his official part for him! Is this compatible with the tenure of an office *durante bene se gesterit*, which creates, as English books say, an estate of freehold, and an interest which can only be determined by his own misbehaviour, which must be determined by judicial investigation? Co. Litt. 42. Show. Parl. Cas. 161.

If the "keeper of the records" holds his appointment during good behaviour, he would have an estate of freehold, or for life, and the privileges, rights, and functions of his office, would be incommunicable, they could not be trespassed upon in any manner, that would diminish the full enjoyment and possession of those rights and functions ; but the functions and duties of the "keeper of the records," may be assumed and exercised by himself, or any one or two of the justices.

Though it is very clear, that neither the constitution, or any analogous principle of the British law, give to this appointment an interest during *good behaviour;* yet it is contended, that this officer holds a *commission* from the government, of which he cannot be divested by this summary mode of proceeding.

The law of England says, that wherever an officer, who holds his office by *patent*, commits a forfeiture, he cannot regularly be turned out without a *scire facias*, nor can he be said to be completely ousted and discharged, without a writ of discharge, for his right *appearing of record, the same must be defeated by matter of as high a nature.* 9 Co. 98. Cro. Car. 60. Co. Litt. 233. 3 Modern, 335.

The law of England may require the process of scire facias to revoke the operations of the great seal ; but with us the *constitution* is the sci. fa. which corrects all the errors of the great seal.

If the great seal of the state has been affixed to a commission or patent unknown to the constitution, it is *ipse facta* a nullity. In such a case the constitution must give way to the commission, or the commission must give way to the constitution.

The *act* of the *legislature* authorizes the justices of the in-

GEORGIA,
Chatham Co.
MAY, 1807.

State
vs.
White.

ferior court, acting as a court of ordinary, to " appoint its own clerk," who shall be " commissioned by the governor," and who shall take an oath previous to his entering upon the duties of his office. Marb. and Crawf. Dig. 219. Now in two particulars, this act is violative of the constitution : 1. In directing a *commission* to be given, and, 2. In calling the person appointed a *clerk.*

An officer cannot be commissioned unless the constitution expressly directs it, nor is a commission ever given to an officer unknown to the constitution, and who derives his appointment and authority from a *legislative source.*

Upon all these grounds, then, this commission is a matter of supererogation ; it is legislative surplusage, and vanishes at the touch and application of the constitutional principle.

If the point, however, is conceded, that this commission is constitutionally given, what advantages will the prisoner derive from the concession ?   If he still holds his appointment *durante bene placito,* the commission is no stumbling block in the way of his removal.

Let us reason from analogy.

By the 2d section of the 2d article of the constitution of the United States, " Congress may by law vest the appointment of such inferior officers, as they think proper, in the President alone, in the courts of law or in the heads of departments."   Now it is a fact, within the knowledge of every one, that the inferior officers so appointed by the President receive commissions under the great seal of the United States ; and it is a fact of equal notoriety, that these inferior officers are removed by him at pleasure.

This section establishes another principle of equal importance to us ; it is this,—that when the constitution does not specify the duration or tenure of office, it submits the duration or tenure to the arbitrary discretion of the person or department, from whom or from which the office is derived.

This doctrine, it seems, has been uniformly acquiesced in, and at times when the spirit of faction would have offered an

GEORGIA,
Chatham Co.
MAY, 1807.

State
vs.
White.

opposition, if that opposition could have been offered with success, or was even susceptible of plausibility.

Where is the difference in the case of the inferior officer who is removable at the pleasure of the President, because the tenure of his office is left indefinite in the constitution of the United States, and the case of the inferior officer appointed by the justices of the inferior court, the tenure of whose office is left indefinite in the constitution of Georgia?

Having disposed of the commission, I will just advert to the other particular, in which the law and the constitution are at variance.

The 6 sect. of the 3 art. of the constitution gives the power to the justices of the inferior court of vesting the care of the records of the court of ordinary in the " *clerk*," or such " other person" as they may appoint. This appointment may therefore be a simple appendage to, a kind of accident of, the office of clerk of the inferior court; for though this section does not add the words " of the inferior court," after the term " clerk," yet it would be a person of sense too gross for the genius of verbal equivocation itself to contend, that " clerk," in this section, refers to any other clerk, than clerk of the inferior court.

If clerk of the inferior court is not referred to, then this section is repugnant and nonsensical, which otherwise is easily reconciled, for, in one breath it would give to this officer the title of clerk, and in the next render such an appellation or title totally incompatible with the nature of his trust, which may be confided to some " other person."

This kind of verbal criticism is not deemed very essential; yet it establishes what we had in view, that the language of the constitution and the law, are not precisely similar; and that the then governor had no right to commission any officer as " *clerk of the court of ordinary*," and that therefore no such officer can be recognised in this court.

I shall now consider the questions, 1. Whether a *contempt* has been committed? and, 2. Whether this court being ap-

prised that the prisoner is charged with, and imprisoned for, a *contempt*, he can be bailed or discharged ?

GEORGIA,
Chatham Co.
MAY, 1807.

State
vs.
White.

1. Has the prisoner committed a contempt ?

*An attachment for a contempt* issues at the discretion of the judges of a court of *record*, against a person for some contempt for which he is to be committed, and may be awarded by them upon a bare suggestion, or on their own knowledge. 1 Bac. Ab. tit. Attachment, p. 180.

It is scarcely necessary for me to inform this court, that a court of record, has a disposing power over his records, and can command its officers. This is a power possessed by a court of record, and consequently by the inferior court as a court of record, (Marb. and Crawf. Dig. 293.) considered abstractedly from the other power, it is conceived, it possesses of removing one of its officers.

The *attachment* in the present case was bottomed upon the denial of the right of the court to dispose of its own records, and upon the refusal of an officer to obey the command of the court.

All officers of courts of record are punishable by *attachment* for disobeying the *commands* of such courts, or otherwise misdemeaning themselves in their offices. 2 Hawk. P. C. 145. 3 Bac. Abr. 744. Whether, therefore, the prisoner is considered *in* or *out* of office, he has disobeyed a command of the court, and has misdemeaned himself in his office, and whether therefore he is *in* or *out* of office, he has committed a contempt.

An obedience to the command of the court, would not have infringed his right to contest the constitutionality of his removal, and it would have saved him from the penalties of a contempt. He still might have resorted to a mandamus to restore him to office.

2. Can this court interfere ?

The court of *King's Bench* will not admit to bail a person committed for a contempt in any other court in Westminster Hall. 1 Wilson, 300.

The court of *King's Bench* will not admit to bail, or dis-

GEORGIA,
Chatham Co.
JUNE, 1807.

State
vs.
White.

charge a person for a contempt of an *inferior court*; in those matters it never interferes.    1 Stra. 567.    1 Hawk. (old Ed.) 112, 113.

The inferior court, acting as a court of ordinary, bears the same relation to the Superior Court, as the court of Common Pleas does to the court of King's Bench, and if an interposition will not take place in the one case, it cannot in the other.

The constitutional power of the superior courts to control the errors of inferior judicatories is not denied; but as the doctrines of contempts are borrowed from the British authorities, and have always been adopted by this court as contained in those authorities, we hope the British authorities in this case will be exclusively consulted.

This being a case not only of great expectation, but one of the first impression in this district, the judge said, that he would not give an immediate decision, but endeavour to obtain the opinions of the other judges. In the meantime the prisoner was ordered to be bailed *de die in diem*, until he was notified of the preparation of the court, to deliver its judgment.

*Cur. adv. vult.*

*June* 16, 1807.

The opinion of the court was now delivered, by *Jones*, Judge :

Upon the return of the habeas corpus the counsel for the prisoner moved, that he be discharged, or that he be bailed, to answer any charge that may be preferred against him.

In support of the motion it was contended :

1. That *this court*, in virtue of the general and superintending jurisdiction with which, by the constitution, it is invested, over all inferior judicatories, can interpose and control, and is bound, upon application, to interpose, and control the proceedings of such inferior judicatories, in all cases where such

proceedings are violative of the constitution and laws of the state.

GEORGIA,
Chatham Co.
JUNE, 1807.

state
vs.
White.

2. That even in England, the doctrine, that one court will not interfere to discharge a person committed for a contempt by another, is only true where such other court is of equal or superior dignity.

3. That this commitment is not to be considered as a commitment for a contempt, because it concludes, for " safe custody ;" but if so considered, such conclusion violates it.

4. That if considered as a commitment for a contempt in disobeying an order of court, it may be discharged by showing that such order is illegal.

5. That the order of the 4th May, 1807,(a) is illegal, because,

1. The justices of the inferior court have thereby appointed an officer not known to the existing laws of this state.

2. They have thereby required the clerk of the court of ordinary, to surrender up the records, and other papers attached to his office, without having removed him from such office, if they had the power so to do.

3. The person so appointed to receive the said records under the order of the said justices, was not legally authorised to receive them, since, if his appointment was legal, he was neither *commissioned* or *qualified.*

4. *Edward White,* having been commissioned by the governor, although appointed by the justices, and no period being given by law for the determination of his office, is entitled to hold the same during *good behaviour ;* or, if *during pleasure,* during the pleasure of him by whom he is commissioned, and is not, therefore, liable to be removed by an order of the justices of the inferior court.

For all which reasons the said *order* is illegal.

5. That the *commitment* is illegal, because no opportunity

---

(a) The attachment was founded upon a disobedience to this order.

GEORGIA, was afforded to the prisoner to purge the contempt alleged
Chatham Co.
JUNE, 1807. against him in the warrant of arrest.(*b*)

State
vs.
White.

6. That the *commitment is not founded on sentence* or
judgment.

7. That the Superior Court, under the constitution, to
review sentence, if there had been one in this case.(*c*)

8. That if it had not jurisdiction generally, yet it has in this
case, because it involves a jurisdiction which belongs *exclu-*
*sively* to this court.(*c*)

And against the motion it was contended,

1. That the court of ordinary is a court of record, and
has a right to punish for contempts.

2. That the court of king's bench will not interfere to dis-
charge a person committed, for a contempt, by another
court, when such other court is of equal or superior dignity.
Therefore, the Superior Court will not interfere in this
case.

---

(*b*) Mr. Attorney General did, in the court below, exhibit the follow-
ing interrogatories:

" Interrogatories to be administered to *Edward White,* Esq. charged
with a contempt.

" 1. Did you refuse to deliver to *Thomas Bourke,* Esq. the keeper of the
records of the court of ordinary, the records, papers, and documents, ap-
pertaining to said court, and which had been in your possession as late
keeper of said records?

" 2. Did you, without the permission of the said court of ordinary,
remove a *part* of the said records, papers, and documents, from their
place of deposit; and what was your intention in doing so?"

These interrogatories were, however, withdrawn, in consequence of
an opinion expressed by their honours, the justices, that the flagrancy
of the contempt superseded the necessity of this mode of proceeding.

(*c*) The clauses of the constitution referred to, are these, in the 3d
article of the constitution, section 1. " The Superior Court shall have
final and exclusive jurisdiction in all criminal cases:" and " shall have
power to correct errors in inferior judicatories by writs of certiorari."
Marb. and Crawf. Dig. p. 27.

3. That by the 6th section of the third article of the constitution, the court of ordinary having the power to appoint a person to take-care of the records, it had, therefore, the power to remove, at *pleasure*, notwithstanding the clerk is commissioned by the governor.(*d*)

4. That no civil right can be investigated upon a return to a habeas corpus.

The question being one of delicacy and importance, affecting the powers of the court of ordinary, and the rights of the clerks of the said courts, I took time to consider of it, and advise with the judges of the Western and Middle Districts, in order to establish a decision, as might be considered as settling the principle.

The prisoner was in the meanwhile bailed to appear from day to day. Some delay has necessarily arisen from the distance at which the judges reside from this place. Their opinions have however at length been received, and duly considered.

In order to determine, upon the motion submitted by the prisoner's counsel, it appeared to me important first to decide ;

Whether, the court of ordinary is a court of record, or,

Whether it be considered as having only the powers of the ecclesiastical courts in England, which are generally taken to be not courts of record. For whether the Superior Courts would judge of a contempt committed in the court of

GEORGIA,
Chatham Co.
JUNE, 1807.

State
vs.
White.

---

(*d*) " The powers of a court of ordinary or register of probates, shall be vested in the inferior courts of each county, from whose decisions there may be an appeal to the Superior Court, under such restrictions and regulations, as the general assembly may by law direct; but the inferior court to *vest the care of the records*, or other proceedings therein, in the clerk, or *such other person as they may appoint*, and any one or more justices of said court, with such clerk or other person, may issue citations, and grant temporary letters, in time of vacation, to hold until the next meeting of the said court; and such clerk, or other person, may grant marriage licenses." 6 Sect. 3 Art. of the Constitution. Marb. and Crawf. Dig. 28.

GEORGIA,
Chatham Co.
June, 1807.

State
vs.
White.

ordinary or not, depended much, in my opinion, upon a determination of this point.

It appears then by the constitution, art. 3, sect. 6, " The powers of a court of ordinary, or register of probates, shall be vested in the *inferior courts*, in each county."

These courts being courts of record established by the constitution, have the power to inflict punishments at the discretion of the court, for all contempts of their authority.

All courts of reco d, (even the lowest,) may commit for a contempt, and without this power no court could possibly exist. The law upon this subject is of immemorial antiquity, and there is not any period, when it can be said to have ceased, or discontinued.

All courts of record have a discretionary power over their own officers, and are to see that no abuses be committed by them which may bring disgrace on the courts themselves. And all officers of courts of records, are punishable for disobeying the commands of such courts, or otherwise misdemeaning themselves in their offices.

In proceedings for contempts, if the return shows a good cause of commitment, it will be valid though it may want form.

This court will not therefore discharge persons, committed for a contempt of the inferior courts ; and especially this court, will not discharge or admit to bail officers of such inferior courts, committed for a contempt against them.

I give no decision on the other points.

For these reasons, it is *ordered* that the prisoner be *remanded*.

Charlton, A. G.
Harris, and } for the state.
Bulloch,

Noel,
Davis, and } for the prisoner.
Berrien,

Major *White*, having afterwards complied with the terms discharged from his imprisonment by an order of that court.

imposed on him by the justices of the inferior court, he was

He then applied for and obtained, from the judge of the Superior Court, a rule to show cause, why a mandamus should not issue to restore him to the offices, from which he has been removed, by the justices of the inferior court.   Vide Min. Sup. Court, Let. F. p. 372.

Cause was ordered to be shown on the first day of the ensuing term in January.   In the mean time, however, the legislature interposed, and, by an act of the general assembly, restored him to the office of clerk of the court of ordinary, and escheator of the county of Chatham, from which he had been removed by the justices of the inferior court.   The rule for the mandamus being thus abandoned, the question, Whether the court of ordinary can remove their clerks at pleasure, notwithstanding his commission from the executive, remains judicially unsettled ; as, also, Whether the legislature can review the proceedings of a court, and restore to office, *under all the circumstances* of this case ; particularly as a mandamus appears to be the clear remedy under the 7th section of the 3d article of the constitution.